```
                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
                             HOUSTON DIVISION
```

| | |
|---|---|
| JENNIFER QUINTANA and § | |
| DAVID QUINTANA, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-007-A |
| § | |
| STATE FARM MUTUAL AUTOMOBILE § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND ORDER

Pending is Defendant's Motion for Summary Judgment (Document No. 76), on Plaintiffs' extra-contractual claims. After carefully considering the motion, response, and applicable law, the Court concludes as follows.

I. Background

This is Part II arising out of Plaintiff Jennifer Quintana's demands that her automobile insurer Defendant State Farm Mutual Automobile Insurance Company pay to her the full policy limits of her underinsured motorist coverage in the amount of $100,000. In Part I, the Jury rendered a verdict that the entirety of Plaintiff's damages--after a 5% deduction for her contributory negligence--totaled $80,287.00. After applying the agreed offsets to which Defendant was entitled and adding prejudgment interest,

the Court on December 19, 2012, pursuant to Fed. R. Civ. P. 54(b) signed a Final Judgment awarding $19,191.46 to Plaintiff Jennifer Quintana.[1] The Court had previously severed for separate trial Plaintiffs' extra-contractual claims (Document No. 10) against Defendant. Defendant now moves for summary judgment on those claims.

The summary judgment evidence establishes that after Plaintiffs notified Defendant of their claim for Uninsured/Underinsured motorist ("UIM") coverage, Defendant's claims representative, Patricia Nicknish, collected documentation from Mrs. Quintana's various medical providers, applied credits to which Defendant was entitled, and on November 8, 2010, made a settlement offer of $27,000 to Plaintiff through her attorney, Mr. Blake C. Erskine, Jr. She stated that, "Once you notify us that your client accepts this offer, we will forward a payment draft to you within five business days. If this amount is not acceptable or if you have additional information you would like us to consider, please forward it to our attention."[2] Although not disclosed to Plaintiffs at the time, Ms. Nicknish had made the following calculations in reaching this proposed settlement figure:

---

[1] Subsequent filings on Plaintiffs' extra-contractual claims have added to the cause number an "A," to designate the severed case (Document No. 63).

[2] Id., ex. 8 at 734.

2

- $22,390.75 in past paid/incurred medical expenses;
- $0 for lost wages;[3]
- A range of $42,000 to $57,000 for past and future physical pain, mental anguish, and physical impairment;
- **Total damages range of $64,390.75 to $79,390.75;**
- Less $25,000 paid under the Pattersons' insurance policy;
- Less $10,000 Personal Injury Protection offset;
- Less $2,449.70 workers compensation offset;[4]
- **Net damages range of $26,941.05 to 41,941.05.**[5]

Ms. Nicknish rounded up her net damages estimate to a range of from $27,000 to $42,000, and presented it to her supervisor, Jerry Benavides, who "granted Ms. Nicknish a maximum of $42,000 in settlement authority."[6] In response to Defendant's initial $27,000 settlement offer, Plaintiffs' attorney responded by asking her to "[p]lease forward a payment draft in the amount of $27,000 by November 17, 2010, as an unconditional tender of partial payment, based on your current valuation of this claim."[7] Ms. Nicknish replied to Attorney Erskine on November 24, 2010, stating that:

> Once you notify us that your client accepts our offer of $27,000.00, we will forward a payment draft to you within

---

[3] Document No. 76, ex. 4 (Nicknish Aff.); Id., ex. 8 at 736-739. She notes that Plaintiffs claimed $2,200 in lost wages but did not provide documentation in support thereof.

[4] Id., ex. 8 at 739.

[5] Id., ex. 4; Id., ex. 8 at 736-739.

[6] Id., ex. 5 (Benavides Aff.).

[7] Id., ex. 8 at 746.

3

> five business days.  If this amount is not acceptable or if you have additional information you would like us to consider, please forward it to our attention.  Please also advise if your client is still being treated or otherwise not ready to negotiate a final settlement of her claim at this time.[8]

Plaintiffs did not provide additional information for Defendant to consider, did not propose an alternative settlement amount, and did not declare she was not ready to negotiate a final settlement. Instead, her attorney responded with a faxed letter on November 30, 2010, stating only that they had not received "the partial payment of $27,000" and that Defendant was in violation of Texas Insurance Code § 542.057(a).  Ms. Nicknish immediately replied to Plaintiffs' counsel the same day, thanking him for the letter and again asking for additional information to be considered if Plaintiffs found the settlement offer not acceptable or if Plaintiff Jennifer Quintana was "still being treated or otherwise not able to negotiate a <u>final</u> settlement of her claim at this time."  On December 9, 2010, Plaintiffs' counsel responded, again repeating that Plaintiffs "accept as a partial payment the sum of $27,000," and this time reporting that Mrs. Quintana had an MRI on October 19, 2010, a spinal CT scan on an unspecified date in November, and a nerve construction study on November 22, 2010.[9]  Having still not received a counteroffer by on or about December 30, or a

---

[8] Document No. 76, ex. 8 at 748.

[9] Id., ex. 8 at 752-53.

declaration that Plaintiff was not able to negotiate a final settlement, Ms. Nicknish concluded that an impasse had been reached, recorded in her notes that she contacted the Department of Navy to get information concerning a lien that would have to be paid with part of the insurance proceeds, and noted that she would then send an impasse draft for the $27,000.[10]

On January 3, 2011 Plaintiffs filed this action, and the next day Plaintiffs' counsel sent a copy of the Complaint to Ms. Nicknish.[11]  Ms. Nicknish that day also sent a letter to Plaintiffs asking for information on the Department of Navy lien, and informing them that once she received that information, she would draft checks totaling $27,000.[12]  After receiving the lien information, Defendant unconditionally issued two checks, one to the United States Treasurer for $9,785.99, and the other to Plaintiff and her attorney for $17,214.01, a total of $27,000.[13]

Upon trial of Plaintiffs' declaratory judgment claim, the Jury determined that Mrs. Quintana should receive the following compensation for her injuries:

- $30,993 in past paid/incurred medical expenses;

---

[10] Id., ex. 4 at 2; ex. 8 at 8.

[11] Id., ex. 8 at 758.

[12] Id., ex. 8 at 756.

[13] Id., ex. 5; Id., ex. 10 at 7 (admission that the two payments entitled Defendant to a credit of $27,000).

- $3,520 for lost wages;
- $50,000 for past and future physical pain, mental anguish, and physical impairment;[14]
- Total damages of $84,513.[15]

After reducing the award by 5% based on the Jury's finding of Plaintiff's contributory negligence, Plaintiffs' recoverable damages were $80,287.35.[16] This number was reduced by $35,000 in agreed offsets and credit for the $27,000 Defendant had already paid, leaving an unpaid loss figure of $18,287.00. Prejudgment interest was added to this sum when Final Judgment was entered.

## II. Discussion

### A. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon

---

[14] Id., ex. 2.

[15] Document No. 63 at 2.

[16] The Jury attributed 95% of the responsibility to Julie Patterson and 5% to Mrs. Quintana.

6

mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the

standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S.Ct. at 2513.

B. Analysis

    1. Breach of Common Law Duty of Good Faith and Fair Dealing

Plaintiffs alleged in their Complaint that Defendant violated its duty of good faith and fair dealing because "Defendant had no reasonable basis for denying or delaying payment of Mrs. Quintana's claim for her UIM benefits of $100,000.00."[17] In response to the Motion for Summary Judgment, Plaintiffs contend that Defendant violated its duty of good faith and fair dealing because Defendant [after allowing for offsets] offered only $27,000 and not "its true $44,000.00 valuation of Plaintiffs' claims--even though its liability was reasonably clear--as early as November 8, 2010."[18]

"An insurer breaches its duty of good faith and fair dealing when the insurer had no reasonable basis for denying or delaying payment of a claim, and the insurer knew or should have known that fact." Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 50-51 (Tex. 1997) (citation and quotation marks omitted); *see also* Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 880-81 (5th Cir. 2004) ("In order to impose liability on State Farm for violations

---

[17] Document No. 16 at 12.

[18] Document No. 78 at 10.

of the duty of good faith and fair dealing . . . Hamburger was required to show that State Farm knew or should have known that it was reasonably clear that Hamburger's UIM claim was covered, but failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement."). "An insurer does not breach its duty merely by erroneously denying a claim. Evidence that only shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." U.S. Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268 (Tex. 1997) (citations omitted).[19]

Here, the dispute turns not on the insurer's denial of a claim but rather on the *amount* of UIM benefits that Plaintiff was entitled to receive for her relatively minor injuries. There is no evidence that Defendant ever denied the claim or its liability

---

[19] Defendant argues that it is entitled to summary judgment as a matter of law because it could not have breached its duty of good faith and fair dealing since Texas law holds that an insurer does not have a contractual obligation to pay the insured "until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 818 (Tex. 2006). As observed by Judge Lee Rosenthal of this Court, however, the Fifth Circuit in Hamburger "implicitly recognized that there may be cases in which an insurer's liability to pay UN/UIM benefits is reasonably clear despite the fact that no judicial determination of the UM/UIM's liability has been made." Accardo v. America First Lloyds Ins. Co., Civ. A. No. H-11-0008, 2012 WL 1576022, at *5 (S.D. Tex. May 3, 2012) (citing Hamburger v. State Farm Mut. Ins. Co., 361 F.3d at 880-81). Defendant highlights the fact that Hamburger was decided before Brainard, but points to nothing in Brainard that contradicts the holding in Hamburger. See id. (finding that "[c]ontrary to America First's argument, *Brainard* does not address or call into doubt *Hamburger*'s holding" and further holding that "*Hamburger*, not *Weir*, is binding on this court").

9

under the policy. To the contrary, the undisputed evidence shows that Defendant acknowledged that the claim was covered by Plaintiffs' UIM policy and offered $27,000 [after offsets] to settle the claim.[20] Plaintiffs do not assert that Ms. Nicknish in formulating her estimate of Plaintiff's damages erred in calculating Mrs. Quintana's medical expenses based on the information she had received at that time or that she excluded from her estimate any documented lost wages. Plaintiffs' argument that Defendant was in bad faith centers on Ms. Nicknish's estimate of Plaintiff's past and future pain and suffering damages as being in a range of from $42,000 up to $57,000, and that she used the low estimate instead of the high estimate in making her initial settlement offer. Plaintiffs' premise is that Defendant necessarily determined that it was "reasonably clear" that Defendant's liability was only for its highest estimate of possible damages rather than its lowest estimate or anything in between.[21] There is no summary judgment evidence that Defendant's "true valuation" was its highest estimate of possible liability, nor do Plaintiffs present any evidence from which it can be inferred that Defendant's settlement offer of $27,000, which included an estimate of $42,000 for past and future

---

[20] Document No. 76, ex. 8 at 000734.

[21] Document No. 78 at 10-12.

physical pain, mental anguish, and physical impairment, was made in bad faith.[22]

As Defendant points out, the reason for estimating a range of damages for past and future physical pain, mental anguish, and physical impairment, is because these losses--unlike lost wages and medical expenses--are inherently subjective. *See* Gen. Motors Corp. v. Burry, 203 S.W.3d 514, 551 (Tex. App.–Fort Worth 2006, no pet.) ("The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss.  The presence or absence of pain, either physical or mental, is an inherently subjective question.  No objective measures exist for analyzing pain and suffering damages. . . . The jury is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering.") (citations omitted).  At trial, the Court without objection from any party instructed the Jury that there is "no exact standard" in awarding such damages, as follows:

> You may award damages for any bodily injury that the plaintiff sustained and any pain and suffering, loss of capacity for enjoyment of life that the plaintiff experienced in the past or will experience in the future as a result of the bodily injury.  No evidence of the

---

[22] The Jury's award of $50,000 for past and future physical pain, mental anguish, and physical impairment was essentially right in the middle of Ms. Nicknish's estimated range.  Document No. 76, ex. 2.

value of intangible things, such as mental or physical pain and suffering, has been or need be introduced.  You are not trying to determine value, but an amount that will fairly compensate the plaintiff for the damages she has suffered.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award that you make should be fair in the light of the evidence.

The fact that the Jury returned a verdict awarding $50,000 for Mrs. Quintana's subjective, intangible damages tends in this case to corroborate the seemingly prescient judgment of Ms. Nicknish that these damages may range from $42,000 to as high as $57,000. In stark contrast to the reasonableness of Defendant's offer, after Plaintiffs filed this case they claimed in their interrogatory answers that Mrs. Quintana should be awarded $450,000 for past and future physical pain, mental anguish, and physical impairment.[23] In final arguments at trial, Plaintiffs' counsel implored the Jury to return a finding that Mrs. Quintana's damages were in the $450,000 range.[24] This uncontroverted summary judgment evidence and trial record finally unveil why Defendant's efforts to effectuate a prompt, fair, and equitable settlement were destined to come to an impasse: Plaintiffs had a vastly exaggerated idea of Mrs. Quintana's intangible damages, so much so that she never deigned to make a counter-offer to Defendant after initially demanding policy limits, and even ignored Defendant's reasonable requests to advise

---

[23] Document No. 76, ex. 9 (Interrogatory No. 10).

[24] Document No. 78 at 12.

if Plaintiff was "still being treated or [was] otherwise not ready to negotiate a final settlement of her claim at this time." The summary judgment evidence in this case shows nothing more than a bona fide dispute about the *amount* of UIM benefits that the insured should receive for her subjective pain and suffering, which is insufficient on this summary judgment record even to raise a fact issue on bad faith. See Hamburger, 361 F.3d at 881 (*affirming* summary judgment for the UIM insurer denying extra-contractual bad faith claims where insured determined $16,039.10 was adequate compensation for the plaintiff's subjective pain and suffering caused by an injury in which the plaintiff presented $18,960.90 in medical bills).

In sum, the uncontroverted summary judgment evidence shows Defendant never denied its liability under the policy and acted in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim. Plaintiffs have not raised so much as a genuine issue of material fact that Defendant violated its duty of good faith and fair dealing.

2. Insurance Code Violations

Plaintiffs' Complaint adds claims that Defendant violated the Texas Insurance Code § 541.060(a)(2)(A) "by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Mrs. Quintana's UIM claim in which liability has become

13

reasonably clear."[25]  Because Plaintiffs have failed to raise a genuine issue of material fact that Defendant acted in bad faith, Plaintiffs' claim that Defendant violated § 541.060(a)(2)(A) likewise fails.  *See* Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that these extra-contractual tort claims [under the DTPA and Insurance Code] require the same predicate for recovery as bad faith causes of action in Texas."); Douglas v. State Farm Lloyds, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999); Tucker v. State Farm Fire & Cas. Co., 981 F. Supp. 461, 465 (S.D. Tex. 1997).

### III.  Order

For the foregoing reasons, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 76) is GRANTED and Plaintiffs Jennifer and David Quintana take

---

[25] Document No. 16 at 13.  The Complaint further alleged a violation of Texas Insurance Code § 542.057(a), but Plaintiffs abandoned that claim.  Document No. 76, ex. 9 at 6-7 (Request for Interrogatory No. 5: "Please set forth the specific acts and omissions committed by State Farm or its employee(s) which violated Texas Insurance Code Chapter 542."  Answer: "None.").

nothing on their extra-contractual claims against Defendant State Farm Mutual Automobile Insurance Company.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 2nd day of October, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE